```
UNITED STATES DISTRICT COURT            FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                        :
RAJAH IKKER,                            :
                                        :
                        Petitioner,     :
                                        :          MEMORANDUM
        - against -                     :          AND ORDER
                                        :
JUSTIN TAYLOR, Superintendent,          :          08 CV 3301 (JG)
Gouverneur Correctional Facility,       :
                                        :
                        Respondent.     :
---------------------------------------------------------------- X
```

A P P E A R A N C E S :

    RAJAH IKKER
        05-R-1015
        Coxsackie Correctional Facility
        P.O. Box 999
        Coxsackie, NY 12051-0999
        Petitioner, *pro se*

    DANIEL M. DONOVAN, JR.
        District Attorney
        Richmond County
        130 Stuyvesant Place
        Staten Island, NY 10301
    By:   Anne Elizabeth Grady
        Attorney for Respondent

JOHN GLEESON, United States District Judge:

        Rajah Ikker, a prisoner incarcerated in the Coxsackie Correctional Facility pursuant to a judgment of the New York State Supreme Court, Richmond County, petitions for a writ of habeas corpus under 28 U.S.C. § 2254. Ikker challenges his conviction following a jury trial of one count of criminal possession of a controlled substance in the fourth degree. Appearing *pro se*, Ikker seeks habeas relief on the grounds discussed below. Oral argument was

held on December 3, 2008, at which Ikker appeared by teleconference from the facility in which he is serving his sentence. For the reasons set forth below, the petition is denied.

BACKGROUND

A.  *The Offense Conduct*

The government's evidence at trial established that at approximately 7:30 p.m. on June 13, 2003, Ikker was stopped by the police while driving a tan Lexus. The basis of the stop was an observation by an officer who was waiting to execute a search warrant. The officer saw Ikker participate in a narcotics transaction at the target location. After stopping Ikker's vehicle, an officer instructed Ikker to exit the car. As Ikker complied, the officer noticed Ikker fidgeting with something in the back of his pants and ordered him to turn around. Ikker refused and began wrestling with the officer. The officer, with the help of his partner, wrestled Ikker to the ground, where he noticed the tail of a plastic bag protruding from the back of Ikker's pants. The police then handcuffed Ikker and removed the plastic bag from inside of his pants. A golf-ball-sized rock of crack cocaine weighing more than an eighth of an ounce was inside the plastic bag.

Ikker was arrested for possession of a narcotic drug weighing an eighth of an ounce or more, and was indicted in New York Supreme Court, Richmond County on two charges: criminal possession of a controlled substance in the fourth and seventh degrees.

B.  *The Procedural History*

1.  *The Trial Court Proceedings*

Ikker filed a motion to suppress the physical evidence seized by the police and challenging the lawfulness of his arrest. On April 28, 2004, a *Dunaway/Huntley* hearing was held on Ikker's motion to suppress.

At the hearing, Detective Salvatore Bellomo testified that on June 13, 2003 he was part of a field team, including Detectives George Boan and Vincent Orsini, executing a search warrant on 27 Marscher Place, Staten Island. H. 4-5.[1] At approximately 7:30 p.m., while sitting in his parked car 100-150 feet from the house they were planning to search, Bellomo received a radio transmission from Boan. H. 5. Boan communicated that a tan, four-door Lexus had pulled up to 27 Marscher Place. H. 5. Bellomo personally observed the Lexus and saw a man exit the car and walk onto the property at 27 Marscher Place. H. 5-6. Bellomo testified that he lost sight of the man as he approached the porch of the house. H. 6. Boan, however, had a line of sight to the porch from his position and transmitted via radio that the man, later identified as Ikker, was a black male approximately six feet in height, wearing a white shirt and black pants. H. 6. Boan also transmitted that he watched a woman come to the door of the house and, in what appeared to be a drug transaction, Ikker put his hand down the back of his pants, pulled out a plastic bag, and gave something to the woman. H. 6. As Boan transmitted that the man was returning to the vehicle, Bellomo watched Ikker get back into the driver's seat of the car and drive away. H. 7. Boan radioed that he wanted the car stopped. H. 7.

Based on this information, Bellomo stopped the Lexus approximately 150 feet from 27 Marscher Place, at the corner of Van Wyck Street and Wilbur Street. H. 7-8. Bellomo approached the car and instructed the driver to exit the car. H. 8. The driver was Ikker. He fit the description transmitted by Boan and was the only man in the car; a woman was in the passenger seat. H. 9. Bellomo testified that when Ikker exited the car, his hand was behind him, fidgeting with the back of his pants. H. 9. Bellomo instructed Ikker to turn around because he did not know what Ikker had in the back of his pants and was fearful it was a weapon. H. 21.

---

[1] Throughout this opinion, "H." refers to the Suppression Hearing transcript and "Tr." refers to the Trial transcript.

Ikker refused to turn around and instead began fighting with Bellomo. H. 9. With Orsini's assistance, Bellomo wrestled Ikker to the ground and handcuffed him. In doing so, they observed the "tail" of a plastic bag sticking out of the back of Ikker's pants. H. 10 & 23. When the detectives stood Ikker up and leaned him against the car, the plastic bag was still protruding from his pants. Bellomo removed the bag from Ikker's pants. It contained crack cocaine. H. 11.

On August 18, 2004, the New York Supreme Court, in a written decision by Justice Leonard Rienzi, credited the testimony of the officers, made factfindings consistent with it, and ruled that Bellomo had reasonable suspicion based on the radio transmissions from Boan to stop Ikker's vehicle. The court noted that although there was no explicit testimony on the issue, in all likelihood the search warrant was for narcotics, since the team executing the warrant was from the Narcotics Bureau. The court found that there was no basis for the suppression of the evidence because

> [E]ven without meeting the threshold of probable cause, there was reasonable suspicion to stop [Ikker's] car, as the detective heard information from his fellow officer during a joint investigation that alluded to [Ikker's] violation of the law. … When [Ikker] reached into the rear of his pants, thus arousing fears as to the officer's safety, the detective properly asked [Ikker] to turn around. [Ikker's] refusal to comply and his physical struggle with the officers clearly sanctioned the right of the police to restrain defendant and remove the plastic bag found in his pants.

*People v. Ikker*, Pre-trial Hearing Decision and Order, Indictment No. 190/2003 at 3 (Sup. Ct. Aug. 18, 2004).

At trial, Bellomo, Boan, and Orsini testified to the events that led to Ikker's arrest on June 13, 2003. Ikker initially stated that he intended to testify, Tr. 364-65, but ultimately decided not to. Tr. 375. The jury found Ikker guilty of criminal possession of a controlled substance in the fourth degree. On March 1, 2005, he was adjudicated a predicate felon and sentenced to an indeterminate term of imprisonment of 6 to 12 years.

4

2. *The Direct Appeal*

On appeal to the New York Supreme Court, Appellate Division, Second Department, Ikker argued through counsel that (1) the hearing court erred in refusing to suppress the fruits of the stop, which he argued was not supported by reasonable suspicion; (2) the trial court denied him due process and an impartial jury by denying his for-cause challenges to three prospective jurors who worked for the New York City Police and Corrections Departments; and (3) his sentence was unauthorized under the 2004 amendments to the New York State's sentencing scheme for drug offenders.

By memorandum decision and order dated September 4, 2007, the Appellate Division, Second Department, affirmed the judgment. It held that (1) the hearing court did not improvidently exercise its discretion in denying Ikker's motion to suppress the physical evidence; (2) Ikker was not deprived of a fair trial by the trial court's denial of his for-cause challenges because none of those three jurors said anything demonstrating an inability to render an impartial verdict; and (3) Ikker was not entitled to be sentenced under the 2004 Drug Law Reform Act because his crime was committed before the act's passage. *People v. Ikker*, 841 N.Y.S.2d 355 (2d Dep't 2007).

Ikker sought leave to appeal on October 4, 2007. The New York Court of Appeals denied his application on November 20, 2007. *People v. Ikker*, 9 N.Y.3d 991 (2007) (Smith, J.).

3. *The Instant Petition*

Ikker filed this petition on August 6, 2008, claiming that he is entitled to a writ of habeas corpus under 28 U.S.C. § 2254 on three grounds, only the first of which was raised on his direct appeal: (1) the hearing court erred in refusing to suppress the fruits of an unconstitutional

stop; (2) Ikker was denied a fair trial because the trial court was biased against him as evidenced by its introductory remarks to the jurors regarding the nature of their service and its refusal to allow Ikker to make a *Serrano* plea[2]; and (3) appellate counsel was ineffective for failing to raise Ikker's claim regarding denial of a fair trial based on the trial court's bias.

Ikker's claim regarding the hearing court's denial of his motion to suppress is not a ground on which I can grant habeas relief because this issue was fully litigated at a pretrial suppression hearing and was rejected on the merits and affirmed on appeal. Ikker's second and third claims, raised for the first time in this petition, are unexhausted. The second claim is also procedurally defaulted. It is dismissed because Ikker shows neither (1) cause for his procedural default or prejudice resulting therefrom, nor (2) that a miscarriage of justice would result if I do not review his claim. While Ikker's third claim is unexhausted but not procedurally defaulted, because it lacks merit, it too is dismissed.

## DISCUSSION

A.  *The Standard of Review*

   1.  *Exhaustion and Procedural Default*

28 U.S.C. § 2254(b) prevents a federal court from granting a petition for a writ of habeas corpus unless the petitioner has first exhausted all available state judicial remedies. In order to have exhausted those remedies, a petitioner must have "fairly presented" his federal constitutional claims to the highest state court by apprising it of "both the factual and the legal premises of the claim he asserts in federal court." *Daye v. Att'y Gen.*, 696 F.2d 186, 191 (2d Cir.

---

[2] A *Serrano* plea is New York's equivalent of an "*Alford* plea" in which the defendant pleads guilty without reciting facts sufficient to establish the elements of the offense to which he is pleading guilty. *See North Carolina v. Alford*, 400 U.S. 25 (1970); *People v. Serrano*, 15 N.Y.2d 304, 309-10 (1965); *People v. Munck*, 717 N.Y.S.2d 431, 432 (3d Dep't 2000); *People v. J.G.*, 171 Misc.2d 440, 443-46 (Sup. Ct. Richmond Cty. 1996) ("A defendant who takes an *Alford-Serrano* plea does not accept responsibility for the offense.") (internal quotation marks omitted).

6

1982) (*en banc*).  An unexhausted claim that can no longer be exhausted is deemed procedurally defaulted.  *See Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2000) ("[W]hen 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted." (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991))).

A claim that has been procedurally defaulted in state court generally cannot be reviewed on the merits by a federal habeas court.  *See Harris v. Reed*, 489 U.S. 255, 260-62 (1989) (explaining rationale for habeas corpus procedural default rule); *see also Coleman*, 501 U.S. at 750 (noting a state's interest in "channeling the resolution of claims to the most appropriate forum, in finality, and in having an opportunity to correct its own errors").  However, there are two circumstances in which a federal claim that has been procedurally defaulted -- or deemed procedurally defaulted due to the exhaustion requirement -- will nonetheless be reviewable on a federal petition for habeas corpus.

First, a petitioner is entitled to review of a procedurally defaulted claim if he can show "cause for the default and actual prejudice as a result of the alleged violation of federal law."  *Coleman*, 501 U.S. at 750; *Teague v. Lane*, 489 U.S. 288, 298 (1989).  A petitioner may establish cause by showing "that the factual or legal basis for a claim was not reasonably available to counsel . . . or that some interference by officials . . . made compliance impracticable."  *Id.* at 753 (internal quotation marks omitted) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  To show prejudice, a petitioner must demonstrate that the alleged error worked to his "actual and substantial disadvantage, infecting his entire trial with error of

7

constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks omitted).

Second, if the petitioner is unable to show cause and prejudice, his procedural default may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to hear the claim on the merits, *i.e.*, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This ground for excusing procedural default should be applied only in "extraordinary" cases, as courts deem substantial claims of actual innocence "extremely rare." *Schlup*, 513 U.S. at 321-22.[3]

2. *Review of State Court Adjudications on the Merits Under AEDPA*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. 28 U.S.C. § 2254(d). Under the AEDPA standard, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*[4]

The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also*

---

[3] A procedural bar actually relied on by a state court to dispose of a claim may be found inadequate to prevent federal review on rare occasions where the state court applies the procedural bar in an "exorbitant" manner. *Lee v. Kemna*, 534 U.S. 362, 376 (2002); *see also Cotto v. Herbert*, 331 F.3d 217 (2d Cir. 2003). This doctrine has no apparent application in a case in which an unexhausted claim is deemed procedurally defaulted, as that is a case in which by definition no state court has applied a procedural bar in any manner, exorbitant or otherwise.

[4] This limited scope of review is often referred to as "AEDPA deference." *E.g., Jimenez v. Walker*, 458 F.3d 130, 135 & n.2 (2d Cir. 2006).

8

*Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

Under the "unreasonable application" standard set forth in *Williams*, "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist*, 260 F.3d at 93 (quoting *Williams*, 529 U.S. at 411). Interpreting *Williams,* the Second Circuit has added that although "'[s]ome increment of incorrectness beyond error is required … the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" *Id.* at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

AEDPA's limited scope of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it refers to federal law in its decision. *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

B.   *Ikker's Claims*

   1.   *The Fourth Amendment Claim*

Ikker argues that the police did not have reasonable suspicion to stop his vehicle and thus asserts that the hearing court erred in refusing to suppress the fruits of an unconstitutional traffic stop. Because this issue was fully litigated at a pretrial suppression hearing and was subsequently rejected on the merits and on appeal, I cannot grant habeas relief on this ground.

A Fourth Amendment claim cannot be raised on habeas review when an opportunity for "full and fair litigation" has been provided in state court. *Stone v. Powell*, 428 U.S. 465, 482 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."). The Second Circuit has already determined that New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710 *et seq.*, is adequate. *See Cappellan v. Riley*, 975 F.2d 67, 70, n.1 (2d Cir. 1992); *Taylor v. Kuhlmann*, 36 F. Supp. 2d 534, 549 (E.D.N.Y. 1999).

Ikker argues that the police lacked reasonable suspicion to stop his vehicle. In support of his position, Ikker notes that Boan did not see any money exchanged and did not know the size of the contents of the plastic bag. Reply Br. 4. In addition, he argues that there was no testimony that 27 Marscher Place was in a drug prone location or that the subject of the search warrant was narcotics related. Finally, Ikker highlights discrepencies in the record with respect to whether the woman who answered the door, Nancy Erikson, was named in the search warrant. Reply Br. 4.

Irrespective of the merits of these arguments, under *Stone* I lack the authority to address Ikker's Fourth Amendment claim because it was litigated at a pretrial suppression hearing and was rejected by the state court. Moreover, Ikker raised the claim on direct appeal, and the appellate court affirmed on the merits. *Ikker*, 43 A.D.3d. at 828 ("The hearing court did not improvidently exercise its discretion in denying that branch of the defendant's omnibus motion which was to suppress physical evidence."). For the reasons discussed above, I may not properly review the merits of Ikker's Fourth Amendment claim here.

2. *Ikker's Unexhausted Claims*

Ikker's petition includes two additional claims that were not raised on direct appeal and thus are not exhausted. First, Ikker claims that he was denied a fair trial because the trial court was biased against him. To support his position Ikker takes issue with (1) the trial judge's allegedly improper introductory remarks to the jurors regarding the nature of their service and (2) the judge's failure to allow Ikker to make a *Serrano* plea. Second, Ikker claims his appellate counsel was ineffective for failing to raise on direct appeal a claim that he was denied a fair trial based on the trial court's bias.

Having failed to raise either of these claims until now, both are unexhausted. Specifically, with respect to the first claim, Ikker's trial counsel failed to object to the trial judge's introductory remarks or to his refusal to allow Ikker to make a *Serrano* plea. Ikker also failed to make a claim on direct appeal that the trial court's bias denied him a fair trial. Nor has Ikker filed a coram nobis motion alleging ineffective assistance of appellate counsel (based on the failure to raise Ikker's claim that he was denied a fair trial because the trial court was biased).

The first of Ikker's unexhausted claims is deemed procedurally defaulted because "the court to which [he] would be required to present his claims in order to meet the exhaustion

11

requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1; N.Y. Crim. Proc. Law § 440.10(2)(c). A procedurally defaulted claim cannot be reviewed on the merits by a federal habeas court absent a showing of cause and prejudice or that a fundamental miscarriage of justice would result from a failure to hear the claim on the merits. Ikker has failed to demonstrate cause for the default,[5] prejudice therefrom or that a miscarriage of justice would result if the claims were not reviewed here. In any event, as discussed below, his claim alleging denial of a fair trial is without merit.

Ikker's other unexhausted claim is not procedurally defaulted because a claim of ineffective assistance of appellate counsel can be brought at any time via a motion for a writ of error coram nobis in the Appellate Division. This claim is nonetheless dismissed because it lacks merit.

    a.     *Ikker's Claim That He Was Denied a Fair Trial Based on the Trial Court's Bias*

Ikker argues that he is entitled to habeas relief because he was denied a fair trial. He argues that the trial judge's introductory remarks to the jury pool and refusal to allow him to make a *Serrano* plea amount to bias. Ikker asserts that Justice Collini's remarks "made it impossible for the prospective jurors in the pool to be free from any preconceived notions, sympathy or prejudice that might prevent them from returning a fair and just verdict." Reply Br. 9. Read in context, I conclude that Justice Collini's comments, which are quoted in the margin,[6]

---

[5] To the extent that Ikker is arguing that the trial attorney's failure to object to the trial judge's introductory commentary was cause for procedural default, this argument also fails because "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it does not constitute cause for a procedural default." *Murray*, 477 U.S. at 486. Moreover, Ikker is precluded from relying on an ineffective assistance of counsel claim as the basis for cause because this claim is unexhausted.

[6] The complained of remarks include the following: "Serving on a jury, ladies and gentlemen, is a vital function of citizens under our system of laws. Its's a great responsibility which is to accord both the defendant and People a fair trial. In order to do this you must be free from any preconceived notions, any sympathy or prejudice that might prevent you from returning a fair and just verdict based solely on the evidence or lack of evidence in the case." Tr. 17 (quoted in Reply Br. 7-8). Ikker also finds fault with the trial justice's comments that

fail to demonstrate a bias against Ikker.  Though the judge's instinct that it might not have been fair to focus the jury on the terrorist attacks of September 11, 2001 at the outset of a criminal trial was certainly correct, the record makes clear that the gist of the challenged comments was an effort to impart to potential jurors the seriousness of their responsibility.[7]  In short, they were not the sort of remarks that warrant habeas relief.

Ikker's argument that Justice Collini's refusal to allow him to make a *Serrano* plea is further evidence of his bias against Ikker is also without merit.  As an initial matter, it is well established that New York trial judges have the discretion to accept or reject pleas.  *People v. Washington*, 645 N.Y.S.2d 622, 623 (3d Dep't 1996) ("[A] trial court is not required to accept every offer of a plea merely because the defendant wishes to enter a plea and may reject a plea offer in the exercise of sound judicial discretion.").  In addition, the record reveals that the Justice Collini repeatedly offered Ikker the chance to take a plea both immediately prior to and in the middle of the voir dire.  Ikker ultimately refused all offers to take a guilty plea.  Tr. 11-12, 104-22.[8]

In sum, even if this claim were not procedurally barred, I would reject it on the merits.  *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial remarks during the

---

"[M]aybe if you think about how, what you actually do, just like any soldier who ever fought in any war to protect our freedom, you protect our freedom just as righteously as they do."  Tr. 21 (quoted in Reply Br. 8).  Ikker also highlights the following statement as improper, "Now sometimes when people come in here, I used to do this in Brooklyn, as I said this is only the second trial I'm doing in Staten Island and here it's so different because I remind people of how they felt, maybe this is unfair.  You want to know what, it's too bad.  I remind them of how they felt on 9/11.  Here it's so important."  Tr. 22 (quoted in Reply Br. 8-9).

[7] Justice Collini emphasized the importance of jurors "put[ting] the People to their proof and mak[ing] sure the people get a fair and honest trial when accused of a crime."  Tr. 20.

[8] On the first day of jury selection, Ikker was offered a plea of 2-4 years.  Tr. 9.  Ikker expressed some interest in the plea but refused to accept responsibility.  Through his lawyer, Ikker said that he wanted to make a *Serrano* plea.  Justice Collini refused, stating, "Part of the plea negotiation process, part of the beginning to moving forward is somebody accepting responsibility for their actions and their willingness to plead guilty in doing that.  If you can't admit your responsibility and your liability and assume responsibility, then there's no sense is even taking a plea."  Tr. 11-12.  During the second day of jury selection the prosecution offered Ikker 3-6 years.  Tr. 104.  Ikker then asked for a guilty plea with a drug treatment program in lieu of incarceration.  Tr. 104-12.  When it finally became clear that such a plea was unavailable, Ikker asked to plead to 2-4 years.  Justice Collini explained that the only offer available to Ikker was 3-6 years if he admitted his guilt.  Ikker refused.

course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." (emphasis in original)). Ikker's claim fails to meet the standard for habeas relief.

        b.     *Ineffective Assistance of Appellate Counsel*

Ikker claims that his appellate counsel was ineffective for failing to argue that he was denied a fair trial based on the bias of the trial court. Reply Br. 7-8. As noted above, this claim is unexhausted but not procedurally defaulted. In New York, the procedural vehicle for claims of ineffective assistance of appellate counsel is a motion for a writ of error coram nobis addressed to the Supreme Court, Appellate Division. *See People v. Bachert*, 69 N.Y.2d 593 (1987). Because there is no time limit for the filing of such a motion, *see Smith v. Duncan*, 411 F.3d 340, 348 n. 6 (2d Cir. 2005), this claim is not procedurally defaulted. Nevertheless, I deny the claim on the merits. *See* 28 U.S.C. § 2254(b)(2) (AEDPA permits the denial (though not the granting) of unexhausted claims on their merits.); *Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting that "stay and abeyance" practice should be "available only in limited circumstances" and that a "district court would abuse its discretion if it were to grant [petitioner] a stay when his unexhausted claims are plainly meritless").

The Supreme Court has established the following standard for claims that defense counsel provided ineffective assistance:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant

14

makes both showings, it cannot be said that the conviction … resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, to make out this type of claim, the petitioner must demonstrate both (1) that his attorney's performance "fell below an objective standard of reasonableness," *id*. at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

In assessing whether counsel's performance was deficient, judicial scrutiny "must be highly deferential," and the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted); *accord Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998); *see also Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*) ("[C]ounsel has wide latitude in deciding how best to represent a client … ."). The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct," *Wiggins v. Smith*, 539 U.S. 510, 521 (2003), instead emphasizing that "'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms,'" *id.* (quoting *Strickland*, 466 U.S. at 688), which requires "a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Wiggins*, 539 U.S. at 523 (quoting *Strickland*, 466 U.S. at 689).

The same test applies to claims regarding the performance of appellate counsel. *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994); *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992). Appellate counsel need not present every nonfrivolous argument that could be made. *See Mayo*, 13 F.3d at 533 (citing *Jones v. Barnes,* 463 U.S. 745, 754 (1983)); *see also*

15

*Evitts v. Lucey*, 469 U.S. 387, 394 (1985) (emphasizing that appellate counsel "need not advance *every* argument, regardless of merit, urged by the appellant" (emphasis in original)). Moreover, reviewing courts should not employ hindsight to second-guess an appellate attorney's strategy choices any more than it may do so in evaluating the performance of trial counsel. *See Mayo*, 13 F.3d at 533 (citing *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). A petitioner, however, may establish constitutionally inadequate performance if he shows that his appellate counsel omitted material and obvious issues while pursuing matters that were patently and significantly weaker. *Cf. Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998) ("[R]elief may be warranted when a decision by counsel cannot be justified as a result of some kind of plausible trial strategy.").

Appellate counsel's decision not to raise Ikker's claim that he was denied a fair trial based on the alleged bias of the trial court was precisely the sort of decision that warrants deference. To the extent Ikker claims ineffective assistance based on trial counsel's failure to object to the trial judge's introductory commentary and the appellate counsel's decision not to complain about that failure, it follows from the preceding discussion that I would not find any such ineffective assistance.[9] Specifically, since I would not find that the trial court was biased against Ikker, I would conclude that trial counsel cannot properly be criticized for failing to object to the trial court's behavior. Similarly, I would conclude that Ikker's appellate counsel was not ineffective for failing to raise on appeal the argument that Ikker was denied a fair trial based on the trial court's bias. Accordingly, because I find Ikker's ineffective assistance of appellate counsel claim to be meritless, I dismiss it on the merits.

---

[9] Moreover, because the trial counsel failed to make a contemporaneous objection to the trial judge's introductory comments or his refusal to permit Ikker to make a *Serrano* plea, these claims were unpreserved for appellate review.

CONCLUSION

For the foregoing reasons, the petition is denied. As Ikker has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So ordered.


John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
December 3, 2008